# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LARRY WADE SLUSHER, also known as
LARRY W. SLUSHER,

Defendant-Appellant.

UNPUBLISHED
March 31, 2015

No. 318672
Wayne Circuit Court
LC No. 00-011949-FC

Before: SERVITTO, P.J., and STEPHENS and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right from his jury trial conviction of first-degree criminal sexual conduct ("CSC-1"), MCL 750.520b(1)(a) (sexual penetration, victim under age 13). The trial court sentenced defendant to a term of 15 to 25 years' imprisonment. We affirm.

## I. FACTS

Defendant's conviction arises out of incidents that occurred in 1997 or 1998. The victim, RH, was nine years old at the time. His parents were divorced. Due to problems with their own home, RH and his mother moved into defendant's home where he resided with his wife and children. RH came home from school one afternoon. Only defendant was home. While RH lay on the couch, defendant pulled down RH's pants and performed fellatio on him. When RH asked defendant to stop, defendant threatened to kill RH if he told anyone. A deliveryman came to the front door, which ended the incident. Three or four weeks later, defendant forced RH to perform fellatio on him. RH did not tell anyone of the assaults when they occurred. In December 1999, RH told police that he had been sexually assaulted by defendant. Charges were filed against defendant, and after a preliminary examination held on October 18, 2000, defendant was bound over to the circuit court on one count of CSC-1. Defendant failed to appear for a final conference scheduled for January 5, 2001, apparently having fled the state. He was extradited to Michigan sometime in late 2012.

Much of defendant's appeal concerns testimony implying that defendant also sexually abused two other children. Defendant's ex-wife testified that in 2000, she filed a report with police regarding defendant and MS, their son. Defendant's mother confirmed that MS made allegations against defendant when he was a child. However, neither defendant's ex-wife nor his mother testified to the nature of the allegations. MS, now an adult, was called to testify by the

-1-

prosecutor. When asked if he had talked to police in 2000, he denied any memory of doing so. The prosecutor then asked MS if he had reported several specific instances and acts of sexual abuse by defendant. MS denied any memory of reporting these events to police. The prosecutor asked MS if he had spoken with an investigator, Anne Kanitra ("Kanitra"), in November, 2012. MS first denied speaking to Kanitra, but then acknowledged talking to her. However, he denied any recollection of the substance of the conversation. MS specifically denied reporting to Kanitra that defendant had sexually abused him as a child and that defendant had sexually abused another boy who was MS's childhood friend and neighbor. The prosecutor then asked MS if defendant's mother had taken him to see a doctor a few months before defendant's trial. MS confirmed this visit, and explained that with the help of this doctor, MS "fixed all [of his] memories [him]self." Defendant's mother testified that she had taken MS "to a doctor so he could talk to him and settle it in his own mind what the truth was."

## II. DISCUSSION

### A. EVIDENCE OF OTHER ACTS OF SEXUAL MISCONDUCT

Defendant first argues that the trial court erred by admitting evidence of other acts of sexual misconduct against a minor through MS. We disagree. "The decision whether to admit evidence is within the discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). "An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say that there was no excuse for the ruling made." *Id*.

Defendant argues that without substantive evidence of other acts of sexual misconduct against a minor, it was improper for the trial court to admit such evidence as impeachment evidence under MCL 768.27a and MRE 403.[1] The error in defendant's argument is that no

---

[1] Pursuant to MCL 768.27a(1):

> (1) Notwithstanding [MCL 768.27], in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

In *People v Watkins*, 491 Mich 450, 467-477; 818 NW2d 296 (2012), our Supreme Court held that MRE 404(b) and MCL 768.27a conflict, and that in matters where MCL 768.27a applies, it

evidence of other acts of sexual misconduct was ever admitted. The prosecutor laid a foundation for the admission of prior inconsistent statements as impeachment evidence. See, e.g., *People v Jenkins*, 450 Mich 249, 256; 537 NW2d 828 (1995) ("The prosecutor properly laid the foundation to impeach [the witness] with extrinsic evidence . . . by showing [the witness] the signed memorandum of his statement and asking him if he remembered making it."). However, the prosecutor never actually introduced any prior inconsistent statements as evidence. Only the prosecutor's questions contain any reference to whether MS reported particular acts to police in 2000 or to a counselor in 2012. The questions coupled with MS's responses did not constitute evidence of prior acts of sexual abuse because MS denied any recollection of making such statements. As this Court explained in *People v Mesik (On Recon)*, 285 Mich App 535, 540-541; 775 NW2d 857 (2009):

> Had [the witness] confirmed, as a witness from the stand, any of the assertions by the prosecutor, those confirmations would have constituted evidence. But [the witness] only denied any recollection of the matters about which he was asked . . . . [T]he prosecutor's questions are not evidence . . . . The trial court properly instructed the jury that evidence includes only the sworn testimony of witnesses and the exhibits admitted into evidence and, among other things, the lawyers' questions to witnesses are not evidence and should be considered only as they give meaning to the witnesses' answers. [Quotation marks omitted.]

Because no evidence of other acts of sexual misconduct was admitted, there can be no evidentiary error with respect to either MCL 768.27a or MRE 403. See *id*. (where the witness denied making statements, a hearsay challenge necessarily failed because no evidence was admitted).

## B. INSTRUCTIONAL ERROR

Defendant next argues that the trial court erred when instructing the jury regarding how to consider MS's testimony. We disagree.

"A party must object or request a given jury instruction to preserve the error for review." *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000). Defendant did request a specific instruction, and to the extent he challenges the trial court's refusal to give his proposed instruction, the issue is preserved. *Id*. However, defendant did not object to the instructions given by the trial court, nor did he request M Crim JI 20.28a. Accordingly, his remaining arguments are unpreserved. *Id*. "Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). Unpreserved claims of instructional error are reviewed for plain error affecting substantial rights. *Aldrich*, 246 Mich App at 124-125. Under this test, defendant must show that an error occurred, that the error was plain, meaning it was clear or obvious, and

controls. However, the Court also explained that evidence admitted under MCL 768.27a is subject to MRE 403, which requires that evidence be excluded if its probative value is substantially outweighed by the risk of unfair prejudice. *Watkins*, 491 Mich at 481-486.

that the error affected his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). For an error to have affected substantial rights, it must have been outcome-determinative. *People v Grant*, 445 Mich 535, 552-553; 520 NW2d 123 (1994).

Defendant also argues that trial counsel was ineffective for failing to raise defendant's unpreserved claims of instructional error. Because defendant did not preserve his claim of ineffective assistance of counsel by moving for a new trial or a *Ginther*[2] hearing below, our review is limited to the record. *People v Armendarez*, 188 Mich App 61, 73-74; 468 NW2d 893 (1991). "A claim of ineffective assistance of counsel presents a mixed question of law and fact. This Court reviews a trial court's findings of fact, if any, for clear error, and reviews de novo the ultimate constitutional issue arising from an ineffective assistance of counsel claim." *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011) (citations omitted).

As this Court explained in *People v Henderson*, 306 Mich App 1, 4; 854 NW2d 234 (2014):

> A defendant has the right to have a properly instructed jury consider the evidence against him or her, and it is the trial court's role to clearly present the case to the jury and to instruct it on the applicable law. The instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence. When examining instructions to determine if an error has occurred, the instructions must be considered as a whole, rather than piecemeal. Even if imperfect, a jury instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights. [Quotation marks, citations, and ellipses omitted.]

Defendant first argues that the trial court erred by failing to give his proposed instruction, and instead, giving a modified version of M Crim JI 4.5, which concerns the use of out-of-court statements as impeachment evidence, coupled with an incomplete and modified version of M Crim JI 4.11, which concerns the use of other bad acts evidence. Defendant argues that these instructions were erroneous because they implied to the jury that it had heard evidence of other acts of sexual abuse when it had not. As was discussed, no evidence of other acts of sexual abuse was ever presented. Thus, we agree that it was incorrect for the trial court to instruct the jury that it had "heard evidence . . . [of] other acts for which [defendant was] not on trial." However, "[w]hen examining instructions to determine if an error has occurred, the instructions must be considered as a whole, rather than piecemeal. Even if imperfect, a jury instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Henderson*, 306 Mich App at 4 (quotation marks, ellipses, and citations omitted). While the jury was not presented with evidence of other acts of sexual abuse, it did hear MS deny reporting a number of specific descriptions of sexual abuse. MS also testified that his memory had been "fixed" with the help of a doctor. From this testimony, a juror could have easily felt that MS's testimony was not credible, and believed that

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-4-

defendant had molested MS or his friend, despite the absence of any actual evidence of this abuse.

The court was left to decide how best to instruct the jury to consider MS's testimony. It first instructed the jury that it could only consider prior inconsistent statements not made under oath, such as statements to the police, for credibility purposes, and not as "evidence that what the witness said earlier is true." While no prior inconsistent statements were actually admitted, this instruction prevented the jury from inferring from MS's denials of reporting sexual abuse to others that such abuse actually occurred. The trial court then provided a portion of M Crim JI 4.11, instructing the jury that it had heard "evidence" of other acts, but not to "convict the defendant here because you think he is guilty of other bad conduct." The portions of M Crim JI 4.11 omitted by the trial court state permitted uses for bad acts evidence. By omitting these portions, and instead simply instructing the jury not to convict defendant "because you think he is guilty of other bad conduct[,]" the trial court essentially instructed the jury not to consider any implication of other acts of sexual abuse at all when deciding defendant's guilt or innocence. While perhaps not perfect, given the unique circumstances of this case, the instructions as a whole adequately protected defendant's rights, and accordingly, reversal is not required. *Henderson*, 306 Mich App at 4.

Defendant argues that the trial court should have given his proposed instruction, which was that MS's testimony was "not evidence of bad acts and must not be considered in deliberations." Assuming defendant's instruction is correct and should have been presented, defendant is not entitled to relief. "No error results from the absence of an instruction as long as the instructions as a whole cover the substance of the missing instruction." *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002). The instructions provided by the trial court, while less direct than defendant's proposed instruction, ultimately conveyed a similar message – that MS's testimony could not be considered as evidence that other acts of sexual conduct occurred and could not be the basis of a conviction.

Defendant also argues that the trial court erred by failing to give M Crim JI 20.28a, which instructs the jury how to consider evidence of other acts of sexual abuse admitted under MCL 768.27a. Defendant waived this issue. M Crim JI 20.28a instructs jurors that evidence of other acts of sexual misconduct against a minor has been introduced, and that if the jury determines that the acts occurred, the jury may consider such evidence when deciding if the defendant committed the offense for which he is on trial. When discussing how to instruct the jury regarding MS's testimony, the trial court suggested instructing the jury that it could "consider it for propensity. First, you have to believe it." Defense counsel interrupted the court, and argued that such an instruction, which parallels M Crim JI 20.28a, would not be proper. Thus, defendant not only failed to request M Crim JI 20.28a; he essentially objected to it being given. "A defendant may not claim error regarding an issue on appeal where his lawyer deemed the action proper at trial or otherwise acquiesced." *People v Rodriguez*, 251 Mich App 10, 32; 650 NW2d 96 (2002).

On the merits, defendant is not entitled to relief. Because no evidence of prior acts of sexual misconduct was admitted, the instruction was inapplicable. See M Crim JI 20.28a. Thus, the trial court would not have abused its discretion by failing to give the instruction had defendant requested it. Further, had the trial court given this instruction, it would only have been

-5-

to defendant's detriment. Providing this instruction would have strongly inferred that MS's testimony could be considered as substantive evidence that the acts occurred, and would have also directed the jury to consider this evidence when determining whether defendant was guilty. Because this instruction would have made a conviction more likely, defendant cannot demonstrate prejudice, and accordingly, is not entitled to relief.

Finally, defendant argues that trial counsel was ineffective for failing to object to the trial court's instructions and for failing to request M Crim JI 20.28a. To sustain a claim of ineffective assistance of counsel, defendant "must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Because defendant's rights were adequately protected by the instructions provided, and because M Crim JI 20.28a would have been to defendant's detriment, defendant cannot demonstrate that a different outcome was reasonably probable had counsel raised defendant's unpreserved claims of error. Accordingly, he is not entitled to relief. *Id*.

## C. PROSECUTORIAL MISCONDUCT

Defendant next argues that several instances of prosecutorial misconduct denied him a fair trial. We disagree. Defendant did not preserve his claims of prosecutorial misconduct by objecting below and requesting curative instructions. *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Because defendant failed to preserve his claims of prosecutorial misconduct, our review is for plain error affecting substantial rights. *Id*. at 329. "Further, [this Court] cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Id*. at 329-330.

"The key test in evaluating claims of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Watson*, 245 Mich App 572, 594; 629 NW2d 411 (2001). "When reviewing a claim of prosecutorial misconduct, this Court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context." *Callon*, 256 Mich App at 330. Whether a prosecutor's remarks amount to misconduct "depend[s] upon the particular facts of each case." *Id*. The prosecutor's remarks "must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *Id*.

Defendant first argues that the prosecutor committed misconduct by asking the jury to consider defendant's possible punishment when deciding the issue of his guilt. This Court is precluded from finding error requiring reversal because defendant did not object to these comments and seek a curative instruction, which would have alleviated any prejudicial effect. *Callon*, 256 Mich App at 329-330. Had the prosecutor improperly argued that the jury should consider defendant's potential punishment when reaching its decision, the trial court could have alleviated any prejudicial effect by instructing the jury not to consider the potential punishment when deciding the case. See M Crim JI 2.23 ("Possible penalty should not influence your decision. It is the duty of the judge to fix the penalty within the limits provided by law.").

-6-

Further, the prosecutor made no such argument. During her opening statement, the prosecutor briefly discussed the fact that defendant fled the state after being charged in 2001. After discussing the evidence she intended to present and the law that applied to the case, the prosecutor ended by stating that defendant "bought himself some 15 years and he wasn't entitled to it. And now we're asking you to make that right." In her closing argument, the prosecutor discussed how minor discrepancies between RH's preliminary examination testimony in 2000 and his trial testimony could be attributed to the intervening lapse of time, and that it was "defendant who decided to take a 13[-]year vacation." The prosecutor also argued that defendant's actions delayed justice in this case. None of these comments asked the jury to consider defendant's punishment. Rather, the prosecutor was alluding to the fact that defendant had delayed standing trial by fleeing the state. Further, the prosecutor thoroughly explained to the jury that it could not consider defendant's potential punishment when reaching its decision. Taking the whole record and reading the prosecutor's comments in context, it is clear that the prosecutor did not ask the jury to consider defendant's potential punishment when reaching its decision, and accordingly, defendant's argument lacks merit.

Relying on the same comments, defendant also argues that it was improper for the prosecutor to ask the jury to "seek retribution" for defendant's disappearance in 2001. A prosecutor may not argue that jurors should convict a defendant as part of their civic duty. *People v Matuszak*, 263 Mich App 42, 56; 687 NW2d 342 (2004). However, the prosecutor also argued that the jury should convict based on the evidence. Thus, the prosecutor's comment did not deny defendant a fair trial.

Defendant next argues that the prosecutor committed misconduct by knowingly seeking to elicit inadmissible evidence by questioning MS regarding alleged incidents of sexual abuse when the prosecutor knew that MS would deny the allegations. Despite MS's denials of the incidents, defendant argues that by hearing the questions, the jury was left to " 'fill in the blanks' and conclude [defendant] sexually assaulted other children." Once again, relief is precluded because defendant failed to seek a cautionary instruction which could have alleviated any prejudice. *Callon*, 256 Mich App at 329-330. In fact, the trial court instructed the jury, "The questions that the lawyers ask the witnesses are not evidence. You should consider the questions only as they give meaning to the answers that were given by the witnesses." Nor can defendant demonstrate error. "[P]rosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence." *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). Both before and during trial, the trial court ruled that the prosecutor could attempt to elicit evidence of other acts of sexual abuse through MS. Although MS ultimately did not provide such evidence, the prosecutor's good-faith effort to admit the evidence cannot form the basis of a claim of prosecutorial misconduct. *Id*.

Defendant's final claim of prosecutorial misconduct relates to the prosecutor's commentary on defendant's flight from the state. He argues that, by arguing that evidence of his flight was uncontradicted, the prosecutor shifted the burden of proof to defendant and improperly referenced his decision not to testify. Once again, reversal is precluded because defendant did not seek cautionary instructions that would have alleviated the prejudice he now claims was caused by the prosecutor's commentary. *Callon*, 256 Mich App at 329-330. Had he done so, the trial court could have instructed the jury on the presumption of innocence and who carried the burden of proof, M Crim JI 3.2, and that it was not to consider defendant's decision not to testify

against him, M Crim JI 3.3. The trial court did, in fact, instruct the jury that a person who is accused of a crime is presumed innocent, that the prosecutor must prove each element of the crime beyond a reasonable doubt, that defendant is not required to prove his innocence or to do anything, that in a criminal case every defendant has the absolute right not to testify, and that when the jury decides the case, it must not consider the fact that the defendant did not testify.

Nor were the prosecutor's statements improper. It is true that "a prosecutor may not imply in closing argument that [a] defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Green*, 131 Mich App 232, 237; 345 NW2d 676 (1983). However, "[a] prosecutor may comment upon the evidence presented at trial," and "may also argue that the evidence was uncontradicted even though the defendant is the only person who could have contradicted the evidence." *Id.* See also *People v Fields*, 450 Mich 94, 115; 538 NW2d 356 (1995) ("Thus, the Court of Appeals has correctly concluded that the prosecutor . . . may observe that the evidence against the defendant is 'uncontroverted' or 'undisputed,' . . . even if defendant is the only one who could have contradicted the evidence . . . ." (citations omitted)). And "a prosecutor's statement that certain inculpatory evidence is undisputed does not constitute a comment regarding the defendant's failure to testify, particularly where someone other than the defendant could have provided contrary testimony." *People v Perry*, 218 Mich App 520, 538; 554 NW2d 362 (1996), aff'd 460 Mich 55 (1999). The prosecutor argued that it was undisputed that defendant fled the state after charges were brought against him in 2000, and asked the jury to infer from this fact that he had a guilty conscience. If there was any evidence to contradict the fact of defendant's flight from Michigan, it could have come from anyone with knowledge of defendant's whereabouts, not just from defendant. Accordingly, the prosecutor's commentary was proper. *Fields*, 450 Mich at 115; *Perry*, 218 Mich App at 538; *Green*, 131 Mich App at 237. In regard to the prosecutor's rebuttal argument that there was no evidence that defendant fled out of panic, this argument was a proper response to defendant's suggestion of such a theory during his closing argument. *Fields*, 450 Mich at 115 ("[O]nce the defendant advances evidence or a theory, argument on the inferences created does not shift the burden of proof."). See also *People v Watson*, 245 Mich App 572, 593; 629 NW2d 411 (2001) (even if otherwise improper, a prosecutor's remarks may not require reversal when given in response to defense counsel's argument).

Defendant also argues that his counsel's failure to object to the above claims of prosecutorial misconduct amounts to ineffective assistance of counsel. Defendant raised no such claim in his statement of the question presented, and as such, the issue is not properly before this Court. *People v Anderson*, 284 Mich App 11, 16; 772 NW2d 792 (2009). Nor is defendant entitled to relief on the merits. As explained, the prosecutor did not commit any acts of misconduct. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

D. TESTIMONY OF RH'S EX-GIRLFRIEND

Defendant next argues that the trial court erred by admitting the testimony of RH's ex-girlfriend under MRE 401, 402, and 403. We disagree. Because defendant preserved this

argument by objecting on the same basis below, we review the trial court's decision for an abuse of discretion. *Aldrich*, 246 Mich App at 113.

RH's ex-girlfriend testified that she and RH were in a relationship for approximately seven years, from 2003 or 2004 through 2011. During this relationship, RH talked about defendant with her. When talking about defendant, RH would be "really upset or angry." "[H]e would cry a lot, or he just wouldn't talk after." RH's emotions regarding what happened with defendant negatively affected the relationship.

Defendant first argues that this evidence was inadmissible pursuant to MRE 401 and 402 because this evidence was not relevant. Pursuant to MRE 401, " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pursuant to MRE 402, "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible."

The challenged testimony was relevant because it tended to demonstrate that RH's testimony was credible. "If a witness is offering relevant testimony, whether that witness is truthfully and accurately testifying is itself relevant because it affects the probability of the existence of a consequential fact." *People v Mills*, 450 Mich 61, 72; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). RH's testimony was the only evidence detailing the sexual assault committed by defendant. Thus, his credibility was crucial to the case. That RH demonstrated a negative emotional response when discussing defendant several years after the assault occurred tends to demonstrate that RH was credible. Accordingly, testimony regarding RH's psychological state when discussing defendant was relevant and admissible. MRE 401 and 402; *Mills*, 450 Mich at 72.

Defendant also argues that if the testimony was relevant, it should have been excluded pursuant to MRE 403. Pursuant to MRE 403, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless cumulative evidence." Under this rule, " 'Evidence is not inadmissible simply because it is prejudicial.' " *People v Blackston*, 481 Mich 451, 482; 751 NW2d 408 (2008), quoting *Waknin v Chamberlain*, 467 Mich 329, 334; 653 NW2d 176 (2002). Nor does MRE 403 permit exclusion of evidence simply because the evidence might harm one party's case. *Id.* " '[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403 . . . .' " *Id.* at 483, quoting *Waknin*, 467 Mich at 334. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). See also *Mills*, 450 Mich at 75-76. "The trial court is in the best position to gauge the effect of such [evidence]." *People v Ackerman*, 257 Mich App 434, 442; 669 NW2d 818 (2003).

Defendant appears to offer two reasons why the evidence should not have been admitted under MRE 403. He first asserts that the testimony "was so prejudicial that, in the view of the jury, the trial was over before they heard one word from the defense." In essence, defendant

argues that the evidence was damaging to his case. However, MRE 403 does not permit exclusion of evidence simply because it is damaging. *Blackston*, 481 Mich at 482. Defendant also indicates that the evidence was "designed to draw upon juror emotionalism . . . ." Evidence that is unfairly prejudicial includes evidence that has "an undue tendency to move the tribunal to decide on an improper basis, commonly . . . an emotional one." *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995). RH's ex-girlfriend simply testified that when RH discussed defendant, he would become upset. The testimony concerned RH's emotions, but was not itself of such a nature as would elicit a strong emotional response from the jury. The trial court did not abuse its discretion by admitting the testimony in light of MRE 403.

## E. SENTENCING

Finally, defendant argues that the trial court violated his constitutional rights by engaging in judicial fact-finding when scoring offense variables 7 and 13 under the United States Supreme Court's decision in *Alleyne v United States*, ___ US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013). We disagree. Because defendant did not raise this claim in the trial court, it is unpreserved, *People v Hogan*, 225 Mich App 431, 438; 571 NW2d 737 (1997), and our review is limited to plain error affecting substantial rights, *Carines*, 460 Mich at 763-764.

Defendant argues that *Alleyne* prohibits a trial court from engaging in judicial fact-finding when scoring Michigan's sentencing guidelines. In *People v Herron*, 303 Mich App 392, 401-404; 845 NW2d 533 (2013), this Court explained that *Alleyne* only held that judicial fact-finding that increases a mandatory minimum sentence is improper. This Court held that *Alleyne* does not implicate Michigan's sentencing scheme, explaining:

> While judicial fact-finding in scoring the sentencing guidelines produces a recommended range for a minimum sentence of an indeterminate sentence, the maximum of which is set by law, it does not establish a *mandatory minimum*; therefore, the exercise of judicial discretion guided by the sentencing guidelines scored through judicial fact-finding does not violate due process or the Sixth Amendment's right to a jury trial. [*Id.* at 403-404 (citation omitted).]

This case is slightly different than *Herron*. Because defendant's crime was committed in 1997, the trial court applied the sentencing guidelines promulgated by our Supreme Court, not those crafted by our Legislature. See MCL 769.34(1) and (2); *People v Reynolds*, 240 Mich App 250, 254; 611 NW2d 316 (2000) ("Thus, the Legislature intended for the Supreme Court's guidelines to continue to apply to felonies committed before January 1, 1999."). However, our Supreme Court's guidelines similarly produced a recommended range for defendant's minimum sentence, not a mandatory minimum. Michigan Sentencing Guidelines Manual, 2d ed (1988), p 47. Further, these guidelines were merely informative, and although the trial court was required to score the guidelines, it "was not necessarily obliged to impose a sentence within" the recommended range. *People v Hegwood*, 465 Mich 432, 438; 636 NW2d 127 (2001). See also *People v Potts*, 436 Mich 295, 302-303; 461 NW2d 647 (1990) (noting that, under the sentencing guidelines promulgated by our Supreme Court, trial courts are to "consider the minimum range recommended by the guidelines, but are not bound by it."). Thus, it is clear that the sentencing guidelines utilized by the trial court in this case do not establish a mandatory minimum sentence, and accordingly, do not implicate *Alleyne*. *Herron*, 303 Mich App at 401-404.

-10-

Affirmed.

/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Michael J. Kelly